| | | |
|---|---|---|
| **CHRISTINE GREEN** | * | **IN THE** |
| 602 Rita Dr. | | |
| Odenton, MD 21113 | * | **UNITED STATES DISTRICT COURT** |
| | | |
| Plaintiff, | * | **FOR THE** |
| | | |
| v. | * | **DISTRICT OF MARYLAND** |
| | | |
| **CAPITAL EXECUTIVE LIMOUSINE** | * | |
| **INC** | | |
| 7088 Balmoral Forest Rd | | |
| Clifton, VA 20124 | * | |
| | | |
| Defendant. | * | Case No.: _____ |
| | | |
| Serve On Resident Agent: | * | |
| ALI K HAN | | |
| 7409 Thames River Dr. | * | |
| Hanover, MD 21076 | | |
| | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

**COMES NOW**, Plaintiff, Christine Green by and through her attorneys, Paul V. Bennett, Esq., and Bennett & Ellison, P.C., and hereby sues Capital Executive Limousine, Inc., and in support thereof states:

## JURISDICTION AND VENUE

1)   This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

2)   Venue is proper in this Court as the events giving rise to Plaintiff's claims occurred in the State of Maryland and Defendant operates within the State of Maryland.

3)      Plaintiff, Christine Green, a resident of Maryland, was employed by Capital Executive Limousine, hereinafter ("Defendant" or "Capital Executive"), until her termination on February 6, 2018.

4)      That at all times relevant hereto, Defendant is an entity employing fifteen (15) or more persons, engaged in business in the State of Maryland, and is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., ("Title VII") and Md. Code Ann., State Government Article, 20-601(d) (2016).

## EXHAUSITON OF ADMINISTRATIVE REMEDIES

5)      In accordance with the Title VII, Plaintiff timely filed a Charge of Discrimination with the Maryland Commission on Civil Rights, cross-filed with the U.S. Equal Employment Opportunity Commission (EEOC), on February 21, 2018. On February 4, 2020, a Notice of Right to Sue was issued by the EEOC. Due to non-receipt of the initially issued Notice of Right to Sue, on April 30, 2020, the Notice was re-issued, which gave Plaintiff 90 days to file suit from the date of April 30, 2020. Therefore, Plaintiff has properly exhausted her administrative remedies before timely filing suit as required for Plaintiff's claims.

## FACTS COMMON TO ALL COUNTS

6)      From November 14, 2016 to February 6, 2018, Plaintiff, Christine Green, was employed as a shuttle bus driver with Capital Executive Limousine, Inc., hereinafter "Capital Executive."

7)      Upon information and belief, Plaintiff contends that Capital Executive is contracted with Baltimore Washington International Airport ("BWI") to provide shuttle service to and from the Amtrak station in Baltimore, MD and the BWI Departure and Arrival terminals.

First Transit, a provider of transit management and contracting services, manages shuttle services for BWI for effective passenger travel.

8)    Defendant generally had four busses running at a time, scheduled every 15 minutes. Accordingly, no two busses should be at one location at a time because the next bus would not arrive at a given location for approximately 30 minutes.

9)    Plaintiff was the only driver of Asian descent and was the only Asian-female driver.

10)    Ali Khan, Plaintiff's manager, is darker skinned and routinely hired African-American managers. While Plaintiff was employed, Khan only hired African-American managers.

11)    Throughout her employment, Plaintiff was subjected to increased scrutiny by management, including Mr. Khan and manager Mr. Charles Douglas (hereinafter "management,") and subjected to harassment from her peers which management knowingly did not address.

12)    Denise Coates (African-American), bus driver, reported false statements to management on numerous occasions that Plaintiff was not picking up passengers on her rotations.

13)    Ms. Coates, is a friend and acquaintance of Mr. Khan.

14)    On several occasions, Ali Khan verbally threatened to terminate Plaintiff's employment for allegedly not picking up passengers from false allegations for misconduct by Denise Coates.

15)    Yet, other drivers (males) routinely parked their buses and slept during rotations, including but not limited to Jay Brown (African-American), and/or parked and talked on the

phone during rotations, including but not limited to Mr. Tally (first name unknown) (African-American) and Thomas Stanowski (Caucasian). At least three other male drivers (names unknown) (African-American) also parked their busses during rotations and talked on the phone.

16) Plaintiff alerted Mr. Khan many times about customers' complaints about Mr. Cuchin, Mr. Tally, Mr. Stanowski, Ms. Coates, and other drivers, but Mr. Khan ignored Plaintiff's notices.

17) Further, when Plaintiff and/or customers made complaints against other drivers (male and black) for not making pickups, management did not reprimand, terminate, or suspend these drivers.

18) On one occasion, Plaintiff witnessed a 74 year old woman almost ran over by Mr. Cuchin. Mr. Cuchin threated the woman to get out of his way or he would run her over. Although this incident was communicated to management, Mr. Cuchin was not reprimanded, suspended, terminated, or otherwise adversely affected.

19) On another occasion, on October 7th 2017, passengers were awaiting pick up at BWI to be taken to the Amtrak station. When the bus appeared, an African-American, male driver (Mr. Tally) looked over to the waiting customers, did not stop or slow down, and drove by. Plaintiff's bus was the next to arrive, at which time the customers told Plaintiff what had occurred. Plaintiff took their names and phone numbers to report the situation.

20) Plaintiff alerted Mr. Khan of this October 7th regarding Mr. Tally, yet Mr. Tally was not reprimanded, suspended, terminated, or otherwise adversely affected.

21) Further, although the busses are spaced apart, two drivers (African-American/male) often arrived/left the same location at the same time. Thus, by the time

4

Plaintiff's bus arrived at that location, significant time elapsed. In this situation, Plaintiff would be falsely accused of not picking up passengers when Plaintiff was on time by her route.

22)     Namely, on one occasion, Plaintiff was falsely accused of being the driver that avoided picking up customers. A customer made a complaint about two drivers, one black and one white male, (Stanowski and Tally), that had arrived at the same time at the Northrop Grumman lot. Both drivers were in a hurry and took off without picking up any passengers. When Plaintiff picked the passenger up about 30 minutes later, the customer asked for the names of the drivers to report the irregular schedule.

23)     To Plaintiff's dismay, Mr. Khan and Mr. Douglas accused Plaintiff of not picking up this passenger timely, yet Mr. Tally and Mr. Stanowski were not reprimanded.

24)     Further, when other drivers (African-American, male) were late for arrival to their shifts or their rotation, they were not reprimanded and Plaintiff would be responsible for a larger volume of customers.

25)     Plaintiff met with Hank (last name unknown), Chief Operations at First Transit on two occasions, and Don (last name unknown), Chief Safety Manager at First Transit, regarding her co-workers' ineffective job performance and abuse of their positions.

26)     After Mr. Khan learned that Plaintiff spoke with First Transit executives, Mr. Khan and Mr. Douglas verbally threatened to terminate Plaintiff if she told Hank about Defendant's operations, whereas Defendant Company contracted with First Transit.

27)     Plaintiff was further harassed by a woman working for BWI in a customer service capacity, which impacted her position with Defendant. This woman (name unknown) worked at the bus stop area at BWI and was friends with other drivers. The woman directed other drivers

on numerous occasions to keep driving without picking up passengers and leave the passengers for Plaintiff to pick up.

28)     Plaintiff became aware the woman was alerting other drivers to do so, which in effect gave Plaintiff an increased passenger load and at times slowed Plaintiff's route. Plaintiff notified the authorities on July 4, 2017 on her shift as a result of this woman's directives. Plaintiff was told by authorities that if someone was harassing her, that she had the right to call the police and if Plaintiff saw the woman again, that she could call them to resolve the situation amicably.

29)     After Plaintiff called the authorities on July 4, Defendant's management directed Plaintiff that she should have reported the matter to management and to avoid calling the police for non-emergency matters.

30)     On November 10, 2017, Plaintiff saw this woman again, who was directing other bus drivers to leave without picking up passengers. Plaintiff called the authorities to resolve the situation.

31)     On November 24, 2017, Mr. Douglas issued a warning letter to Plaintiff that she could not call the police for these matters, as she had done so on July 4 and November 10. The letter memorialized a 5-day suspension for Plaintiff's failure to follow management's directive and for disrupting service. Further, the letter served as a warning that any future incidents of the nature will result in suspension or termination.

32)     The increased scrutiny on Plaintiff's performance and lack thereof for other drivers' performances continued.

6

33)   On January 31, 2018, Plaintiff and Ms. Coates were on duty. As Plaintiff was leaving a pick-up location, Mr. Douglas radioed to Plaintiff that after she finished dropping those passengers, she should return to the bus lot.

34)   When Plaintiff arrived back at the lot, Plaintiff learned that Ms. Coates had called Mr. Khan, who was at home at the time, and told him that Plaintiff was not picking up passengers. Mr. Khan told Mr. Douglas to tell Plaintiff she was immediately terminated for not picking up passengers. Plaintiff was suspended indefinitely.

35)   Plaintiff vehemently denied the accusation of not picking up passengers. Particularly, Plaintiff is aware that Mr. Douglas witnessed Plaintiff picking up passengers on January 31, 2018 at the BWI terminal despite Ms. Coates assertion.

36)   Plaintiff asked Mr. Khan to review her dash camera attached to the windshield of every bus facing the interior of the bus to demonstrate that the accusation of her not picking up passengers was false. To Plaintiff's knowledge and belief, Mr. Khan did not review the footage.

37)   Plaintiff thereafter received a letter dated January 31, which stated that Plaintiff was in violation of company policy and was terminated February 6, 2018.

## COUNT I
## HOSTILE WORK ENVIRONMENT
### (Adverse Actions and Protected Activity Deterrents)
### Title VII of the Civil Rights Act of 1964, as amended,
### 42 U.S.C. § 2000e, *et seq.*

38)   Plaintiff hereby restates and incorporates Paragraphs 1 through 37 of this Complaint as though fully set forth herein

39)   Plaintiff was subjected to harassment and hostility by her supervisor, Ali Khan and Charles Douglas, including but not limited to threatening to terminate Plaintiff for false accusations of not picking up passengers, threatening to terminate Plaintiff for reporting

workplace misconduct, and failing to investigate Plaintiff's complaints regarding her co-workers' misconduct affecting her work performance, which created a personally hostile and offensive environment to Plaintiff.

40)     The actions as set forth above in the facts common to all counts were designed to intimidate, harass, and humiliate Plaintiff.

41)     That Plaintiff's supervisors carried out the aforementioned acts against Plaintiff on the basis of her race (Asian), a protected class under Title VII of the Civil Rights Act of 1964.

42)     That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964.

43)     The unlawful employment practices complained of above were intentional.

44)     That Plaintiff complained of the unlawful practices to both of her supervisors and First Transit management regarding Plaintiff's supervisors' and co-workers' conduct. Upon information and belief, Plaintiff contends that Plaintiff's supervisors own Defendant company and thus Plaintiff had no higher authority within Capital Executive to make complaints to.

45)     Plaintiff believed her work environment to be hostile and abusive as a result of Defendant's conduct and such conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

46)     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race (Asian).

47)     That the aforementioned conduct of Defendant's supervisory employees was sufficiently severe and pervasive so as to alter the terms and conditions of Plaintiff's employment, including but not limited to termination.

48)     That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish, as well as to incur attorney's fees and court costs.

49)     That the intentional actions of Defendant, through its supervisory employees against Plaintiff, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

50)     That Defendant knew or should have known of the aforementioned conduct of Defendant's supervisory employees against Plaintiff and failed to take prompt corrective actions.

51)     That Defendant is vicariously liable for the conduct of its supervisory employees carried out in the course and scope of their employment. All of the acts set forth above by the supervisory employees were carried out in the course and scope of their employment.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT II**
**RACE DISCRIMINATION**
**(Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e,** *et seq.*

52)     Plaintiff hereby restates and incorporates Paragraphs 1 through 37 of this Complaint as though fully set forth herein.

53)     Plaintiff was qualified and satisfactorily performing her duties as a bus driver.

54)     That Defendant carried out the aforementioned acts of discrimination against Plaintiff based on her race (Asian)—a protected class under Title VII.

55)     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race (Asian).

56)     That the unlawful employment practices complained of above were intentional.

57)     That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964.

58)     Based upon information and belief, similarly-situated non-Asian employees, (other drivers) were not subjected to the same or similar severe adverse employment actions that Plaintiff endured, including, but not limited to, termination from employment, reprimands for not picking up passengers and reprimands for complaining of workplace misconduct, harassment, micromanagement and intimidation.

59)     All other drivers (non-Asian) held the same job functions as Plaintiff, received the same or similar training as Plaintiff and were supervised by the same individuals and superiors at Capital Executive. Further, all other drivers received more favorable treatment in that they were not suspended or terminated from their positions, reprimanded for their own misconduct, threatened not to make complaints to authorities, or otherwise adversely affected.

60)     That Plaintiff was discriminated against in employment based on her race when she was treated less favorably than similarly situated non-Asian employees who were not subjected to the aforementioned acts of discrimination.

61)     Plaintiff was the only Asian driver for Capital Executive.

62)     A motivating factor for taking the aforementioned adverse job actions against Plaintiff was because of her race.

63)     That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish as well as to incur attorney's fees and court costs.

64)     That the discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below

**COUNT III**
**WRONGFUL TERMINATION**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e et. seq.**

65)     Plaintiff hereby restates and incorporates Paragraphs 1 through 37 of this Complaint as though fully set forth herein.

66)     On January 31, 2018, Defendant issued an indefinite suspension letter terminating her employment effective February 6, 2018.

67)     Plaintiff was successfully performing her duties that day when Mr. Douglas called Plaintiff into the bus lot.

68)     Plaintiff was informed that Ms. Coates, another driver, notified Mr. Khan that Plaintiff was not picking up passengers.

69)     Although Mr. Khan was not present at work that day, and based on information from another driver and personal friend, Ms. Coates, Mr. Khan told Mr. Douglas to terminate Plaintiff.

70)     Plaintiff saw Mr. Douglas on her rotations that day and thus Plaintiff has knowledge that Mr. Douglas knew in fact that Plaintiff was picking up passengers that day.

71)     The purported reasons given for Plaintiff's termination are false and are a pretext for Defendant's wrongful termination of Plaintiff's employment.

72)     That the aforementioned acts constitute unlawful practices pursuant to Title VII.

73)     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race.

74)     That the unlawful employment practices complained of above were intentional.

75)     That the intentional actions of Defendant through its supervisory employees against Plaintiff, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

76)     That the hostile and discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish as well as to incur attorney's fees and court costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT IV**
**GENDER DISCRIMINATION**
**(Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e et. seq.**

77)     Plaintiff hereby restates and incorporates Paragraphs 1 through 37 of this Complaint as though fully set forth herein.

78)     That Defendant carried out the aforementioned acts of discrimination against Plaintiff based on her gender (female) – a protected class under Title VII.

79)     That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e et seq.

80)     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender (female).

12

81)     That the unlawful employment practices complained of above were intentional.

82)     That the discriminatory actions as set forth above, have cause and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

83)     That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or reckless indifference to Plaintiff's rights.

84)     That Plaintiff was similarly situated as other male employees, as they conducted the same or similar job duties, namely bus driving. Further, they were also supervised by Ali Khan and Charles Douglas (males) and underwent the same and/or similar training.

85)     That Plaintiff discriminated against in employment based on her gender when she was treated less favorably than similarly situated male employees, including but not limited to, Mr. Tally, Mr. Cuchin, Jay Brown (male) and Mr. Stanowski, who were not subjected to the aforementioned acts of discrimination, including but not limited to: reprimands, suspension, termination, threats with suspension and termination, and to not make complaints of workplace misconduct. A motivating factor for taking the aforementioned adverse job actions against Plaintiff was because of her gender.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT V**
**RETALIATION**
**(Adverse Actions and Protected Activity Deterrents)**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. §§ 2000e et seq.**

86)     Plaintiff hereby restates and incorporates Paragraphs 1 through 37 of this Complaint as though fully set forth herein.

87)     Plaintiff was subjected to verbal threats of suspension and/ termination for making complaints to First Transit regarding her belief of work place misconduct and for calling the police when she felt threatened while at work. Plaintiff was further subjected to intimidation and hostility when management ignored her complaints that she was being treated in a disparate manner.

88)     The aforementioned legally protected activities were known by management to have occurred.

89)     The subsequent hostile work environment, suspension, and termination as set forth in the above-referenced facts common to all counts amounted to illegal retaliation.

90)     That the aforementioned acts of retaliation for complaining of discrimination constitute unlawful employment practices pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e et seq.

91)     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her race.

**COUNT VI**
**HOSTILE WORK ENVIRONMENT**
**(Adverse Actions and Protected Activity Deterrents)**
**MARYLAND CODE ANN. STATE GOVERNMENT ARTICLE, § 20-606**

92)     Plaintiff hereby restates and incorporates Paragraphs 1 through 37 of this Complaint as though fully set forth therein.

93)     The actions set forth above were designed to intimidate, harass, and humiliate Plaintiff.

94)     Plaintiff was subjected to harassment and hostility by her supervisor, Ali Khan and Charles Douglas, including but not limited to threatening to terminate Plaintiff based on

false accusations of not picking up passengers, threatening to terminate Plaintiff for reporting workplace misconduct and failing to investigate Plaintiff's complaints regarding her co-workers' misconduct affecting her work performance, which created a personally hostile and offensive environment to Plaintiff.

95)     That Defendant's supervisors carried out the aforementioned acts against Plaintiff on the basis of her race (Asian).

96)     That the aforementioned acts constitute unlawful practices pursuant to Maryland Code Ann., State Government Article, § 20-606.

97)     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race (Asian).

98)     That the unlawful employment practices complained of above were intentional, unwelcome, and personally hostile and offensive to Plaintiff.

99)     That the aforementioned conduct of Defendant's supervisory employees was sufficiently severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and to create an intimidating, hostile and offensive working environment for Plaintiff.

100)    That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish as well as to incur legal fees and court costs.

101)    That the intentional actions of Defendant and its supervisory employees against Plaintiff, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

102)   That Defendant knew or should have known of the aforementioned conduct of Defendant's supervisory employees against Plaintiff and failed to take prompt corrective actions.

103)   That Defendant is vicariously liable for the conduct of its supervisory employees carried out in the course and scope of their employment. All of the acts set forth above by the supervisory employees were carried out in the course and scope of their employment.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT VII**
**RETALIATION**
**(Adverse Actions and Protected Activity Deterrents)**
**MARYLAND CODE ANN. STATE GOVERNMENT ARTICLE, § 20-606**

104)   Plaintiff hereby restates and incorporates Paragraphs 1 through 37 of this Complaint as though fully set forth herein.

105)   Plaintiff was subjected to verbal threats of suspension for complaining to First Transit regarding workplace misconduct and written threats of suspension and termination for calling the police when Plaintiff felt threatened while at work. Plaintiff was further subjected to intimidation when Defendant repeatedly ignored Plaintiff's complaints that she was being treated in a disparate manner and of her co-worker's misconduct.

106)   The aforementioned legally protected activities were known by management to have occurred.

107)   The subsequent adverse employment actions as set forth in the above-referenced facts common to all counts, including but not limited to written reprimands, suspension and termination from employment.

108)   That the aforementioned acts of retaliation for complaining of discrimination and reporting threatening behavior Plaintiff was subjected to at work constitute unlawful employment practices pursuant to Maryland Code Ann., State Government Article § 20-609.

109)    That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her race (Asian) and participation in legally protected activities.

110)    That as a direct and proximate result of retaliatory employment practices carried out from the time Plaintiff engaged in the aforementioned protected activities including suspension and termination, Plaintiff has suffered and will continue to suffer from loss of earnings, severe emotional distress, humiliation, and mental anguish.

111)    That the intentional retaliatory actions complained of above were done with malice and/or reckless indifference to Plaintiff's rights.

### PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Christine Green, Plaintiff, demands judgment against Defendant, Capital Executive Limousine, Inc., as follows:

a)    Lost wages in the amount of approximately $50,000.00;

b)    Damages for her emotional distress and mental anguish in the amount of $150,000.00;

c)    Prejudgment and post judgment interest;

d)    Award attorney's fees and costs, including expert witness fees, as allowed by law;

e)    Award past and future economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, back pay and lost benefits, COBRA payments incurred by Plaintiff, front pay, and special damages comprised in part of, but not limited to, past and future costs of borrowing funds to meet financial obligations, and past and future out-of-pocket pecuniary losses;

f)       Award past and future non-economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, lost earnings capacity, mental suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, and inconvenience;

g)       And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully Submitted,

_____/s/_____

Paul V. Bennett, Esq. (Bar No. 10324)
Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: pbennett@belawpc.com
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff, Christine Green, by and through her attorneys, Paul V. Bennett, Esq., and Bennett & Ellison, P.C., hereby demands that this above-captioned matter be tried before a jury on all issues so triable.

Respectfully Submitted,

_____/s/_____

Paul V. Bennett, Esq. (Bar No. 10324)
Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201
Annapolis, Maryland 21401